Marsha Ann Jones FOXWORTH and Raymond Anthony Foxworth, Plaintiffs,

v.

DURHAM LIFE INSURANCE COMPANY and United Employers Federation, Defendants.

Civ. A. No. J89–0339(L).

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 19, 1990.

der art. 2751 even though its language limits its availability to "[t]he defendant[s] in the executory proceeding[s]."

**1228**

Brad Sessums, Jackson, Miss., for plaintiffs.

George F. Woodliff, III, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs, Marsha Ann Jones Foxworth and Raymond Anthony Foxworth, brought this diversity action against defendants, Durham Life Insurance Company (Durham) and United Employers Federation (UEF), asserting state law claims for breach of contract, negligence and tortious breach of contract arising out of defendants' denial of a claim for medical benefits submitted by Mrs. Foxworth. Presently before the court is defendants' motion for summary judgment. Also before the court is plaintiffs' motion designated as one for partial summary judgment; however, the relief sought thereby is not judgment on any particular claim, but merely a determination on an issue of law. Each party has responded to the opposing motion, and the court has considered the memoranda submitted by the parties in ruling on the motions.

Plaintiff Raymond Foxworth is the owner of Foxworth Chiropractic Clinic. Defendant UEF is a multiple employer trust (MET) which purchases group life, health and accidental death and dismemberment insurance and then offers that insurance to employers who have too few employees to obtain group insurance on their own. At all times relevant to the present dispute, UEF purchased its insurance from defendant Durham. In late 1987 or early 1988, Foxworth became interested in obtaining group health insurance coverage for himself and his employees. At this time, Foxworth employed his wife, plaintiff Marsha Ann Jones Foxworth, and two additional full-time employees. Toward this end, he met with a UEF agent to discuss the coverage options available. Subsequently, Foxworth selected the particular options to be made available and filled out a form entitled "Employer's Application to Participate in United Employers Federation Trust," thereby subscribing the clinic as a member of UEF. Foxworth insured himself and his wife under the plan; another clinic employee, Candace Rester, also chose to participate and received coverage under the Durham policy.

Sometime after the effective date of her coverage, Mrs. Foxworth underwent medical treatment and filed a claim with defendants. Defendants denied the claim, stating that the treatment was for a preexisting condition, which was excluded under the terms of the policy. The Foxworths then brought the present action.

Defendants seek summary judgment on the basis that all of plaintiffs' claims "relate to" an employee welfare plan regulated by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and are therefore preempted by ERISA's exclusive remedy provision, 29 U.S.C. § 1144. Plaintiffs, by their motion,

seek a determination that their claims are not preempted. The parties do not dispute that if the insurance provided by defendants constituted or was part of an ERISA plan, plaintiffs' claims relate to that plan and are therefore preempted. The narrow issue before the court is whether the present dispute involves an ERISA plan.

ERISA preempts all state law claims which "relate to any employee benefit plan." 29 U.S.C. § 1144. The term "employee benefit plan" includes an "employee welfare benefit plan," the definition of which, in turn, includes

> any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits....

29 U.S.C. § 1002(1). The leading case on the issue of when a "plan, fund, or program" is established or maintained by employer provisions of group health insurance coverage is *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). In *Donovan,* the Secretary of Labor brought an action against the trustees of a MET formed for the purpose of providing group health insurance to subscribing employers. The question before the court was whether the suit related to an ERISA plan. The court first briefly observed that it was well-established, and the parties agreed, that the MET was not itself an employee welfare benefit plan. *Id.* at 1372. The more difficult question was whether each employer had, by subscribing to the MET, established an ERISA plan for its employees. The court set forth the analysis for answering this question as follows:

> In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund, or program can be adopted, explic-

itly or implicitly, from sources outside the plan, fund, or program—e.g., an insurance company's procedure for processing claims ...—but no single act in itself necessarily constitutes the establishment of the plan, fund, or program. For example the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple polices covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

> In summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an *employee* welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Id.* at 1373.

The Fifth Circuit has recently spoken to the issue of when an employer's provision of group insurance coverage indicates the establishment or maintenance of an ERISA plan. In *Memorial Hospital System v. Northbrook Life Insurance Co.,* 904 F.2d 236 (5th Cir.1990), Noffs, Inc. purchased from Northbrook Life Insurance Company a group health insurance policy in order to provide health insurance to its employees. Noffs contributed one-half of the cost of the premiums, while participating employees paid the remainder. Noffs had no participation in or control over the manner in which claims were processed or benefits

paid; its sole responsibility was the partial payment and remittance of premiums. The plaintiff, an assignee of benefits allegedly due a beneficiary under the policy, asserted several state law claims against the insurance company based upon the failure to pay benefits. The district court dismissed the claims, concluding that they related to an ERISA plan and were therefore preempted.

On appeal, the plaintiff relied on a 1980 Fifth Circuit case, *Taggart Corp. v. Life & Health Benefits Administration*, 617 F.2d 1208 (5th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), in support of its position that the suit did not relate to an ERISA plan. In *Taggart*, the sole employee of Taggart Corporation subscribed to a MET for the purpose of obtaining coverage for himself and his family. The *Taggart* court first considered whether the MET itself was an ERISA plan and concluded it was not, since it was neither established nor maintained by an employer. Next the court considered whether Taggart's subscription to the MET constituted an ERISA plan. After considering the purpose for which ERISA was enacted—protection against abuses with respect to private pension assets—the court concluded that Congress did not intend for the Act to regulate "bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Id.* at 1211.

In *Memorial* the Fifth Circuit concluded that *Taggart* did not control the facts before it, rejecting the argument that only the bare purchase of health insurance was involved. The court distinguished *Taggart* on the basis that in that case there was no employer-employee-plan relationship: The employer had no intent to benefit any employees, or at least none other than himself, because, indeed, there were no other employees. In contrast, in *Memorial*, an employer-employee-plan relationship existed. Noffs clearly intended to benefit its employees by the purchase of the insurance. According to the court, this intent, combined with the fact that benefits, intended beneficiaries, and a claims procedure could easily be determined, indicated that Noffs had established a welfare benefit plan for its employees.

This court reads *Memorial* as holding that in order for an employee welfare benefit plan to exist, there must be two things: An intent to benefit employees *qua* employees (as opposed to, for example, a sole employee's intent to benefit only himself, as in *Taggart*), and the carrying out of that intent through the provision of benefits of the nature described in 29 U.S.C. §§ 1002(1) and (2) (health, disability, pension, etc.) pursuant to an organized program, that is, a program whereby "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits," *Donovan*, 688 F.2d at 1373. In the present case, the undisputed facts reveal that by subscribing to UEF, Foxworth established an organized program or plan which provided benefits to his employees. In addition, Foxworth indicates in both his deposition and his affidavit that while one reason for his subscription was to obtain insurance for himself and his family, another purpose was to benefit existing and future employees of his clinic. He states that in the past, prospective employees had inquired about health benefits, and that he subscribed to UEF because he "wanted to do this for his employees and for [himself]." He also explains that after his wife, who had worked at the clinic, became ill, he began paying the premiums for Candace Rester's policy as a way of saying "thank you" to her for assuming the extra responsibilities which resulted from his wife's absence. Since the time of his subscription, Foxworth has employed at least one additional employee who has participated in the plan. The only reasonable inference that can be drawn from these facts is that one of Foxworth's purposes in subscribing to UEF and in maintaining that subscription was to provide health benefits to his employees.

Foxworth nevertheless contends that he did not establish an ERISA plan, relying on the safe-harbour regulations promulgated by the Secretary of Labor. 29 C.F.R.

§ 2510.3–1(j) (1989). These regulations provide that the term "employee welfare benefit plan" does not include a group insurance program under which (1) no contributions are made by the employer, (2) participation is voluntary for employees, (3) the sole function of the employer is, without endorsing the program, to permit the insurer to advertise the program to employees and to collect premiums and remit them to the insurer, *and* (4) the employer receives no consideration in connection with the program, other than reasonable compensation for administrative services rendered. Plaintiff's program does not meet this description however, because it fails the third requirement. Foxworth did much more than merely allow Durham to advertise: He actively sought out a program and chose particular options to be offered his employees. Moreover, by these actions, he implicitly endorsed the program. Foxworth's plan also fails the first requirement: Foxworth admits that for several months he made contributions in the form of payments for Candace Rester's premiums. In summary, plaintiffs' claims are not saved from preemption by the safe-harbour regulations.

Foxworth established "a plan, fund, or program" within the meaning of 29 U.S.C. § 1002(1) when he subscribed to UEF and obtained insurance coverage for his employees. Because plaintiffs' claims relate to that plan, they are preempted and must be dismissed. Accordingly, defendants' motion for summary judgment is hereby granted; plaintiffs' motion is denied. A separate judgment dismissing the complaint with prejudice shall be entered pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED.