**Martin HANSEN, Plaintiff–Appellant Cross–Appellee,**

v.

**The CONTINENTAL INSURANCE COMPANY and Commercial Insurance Company of Newark, New Jersey, Defendants–Appellees Cross–Appellants.**

No. 90–2504.

United States Court of Appeals, Fifth Circuit.

Sept. 10, 1991.

Douglas E. Hamel, Judson R. Wood, Kimberly Rick, Vinson & Elkins, Houston, Tex., for plaintiff-appellant cross-appellee.

Joseph M. Nixon, Houston, Tex., for defendants-appellees cross-appellants.

Before POLITZ, JOHNSON, and GARWOOD, Circuit Judges.

JOHNSON, Circuit Judge.

This case calls upon this Court to determine once again whether a policy of insurance is covered by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA). As in so many other cases, much hinges on this determination. If the policy at issue here falls within the purview of ERISA, then it was proper for this case to be decided by the federal district court. If, on the other hand, the policy at issue here was not an ERISA plan, then the federal courts have no jurisdiction of the case; it should not have been removed from the Texas state court where it was filed, and the judgment of the district court must be vacated and the case remanded to that state court. Because we conclude that the plan at issue here does fall within the purview of ERISA, we hold that it was properly removed. Moreover, we hold that the district court correctly resolved all of the issues before it and therefore affirm its judgment in all respects.

### I. Facts and Procedural History

The facts of this case are largely uncontested. On September 4, 1988, Martin Hansen's wife died of injuries sustained in an automobile accident. At the time Hansen held a group accidental death and dismemberment insurance policy, issued by Continental.[1] The policy covered Hansen, his wife, and their two children. The policy had been made available to Hansen through a plan of group accident insurance for employees of Fairfield Industries. Participation in the plan was voluntary, and the employees paid all of the premiums themselves, by means of payroll deductions.

Although Fairfield employees were not required to participate in the plan, the summary judgment evidence demonstrates that

---

1. For the sake of clarity, both defendants—The Continental Insurance Company and Commercial Insurance Company of Newark, New Jersey—are referred to collectively as "Continental."

Fairfield did endorse the plan. A booklet[2] entitled "Group Accident Insurance Plan for the employees of Fairfield Industries" and bearing Fairfield's corporate logo was given to "All Employees." The booklet informed Fairfield employees that

National Safety Council statistics show that over 100,000 people lost their lives in accidents last year. Daily newspaper stories tell us of tragedies involving people at work, play, in airline and automobile crashes and even in home activities that are considered safe.

Th[is] booklet explains *our plan of Group Accident Insurance* designed to help provide financial security if unexpected death or dismemberment occurs....

*While participation is left to the decision of each employee, we ask that you give the program careful consideration. The insurance can be a valuable supplement to your existing coverages.*

R. 115–16 (emphasis added). In addition to endorsing the plan to its employees and collecting their premiums and remitting them to Continental, Fairfield also employed a full time "employee benefits administrator" who accepted claim forms from Fairfield employees and submitted them to Continental.

Under the plan, the employee was able to choose the amount of coverage—called the "Principal Sum"—up to a limit of $500,000. Hansen chose a principal sum of $200,000; accordingly, the policy would pay that amount upon his accidental death and a portion of that amount upon the accidental death of his wife or either of his two children. The booklet described the benefits as follows:

You will be insured for the Principal Sum in the amount chosen. Your spouse will be insured as follows:

1. If there are eligible children, your spouse will be insured for an amount equal to 40% of the employee's benefit and an amount equal to 10% of the employee's benefit for each eligible child. Your amount is not reduced.

2. If there are no eligible children your spouse will be insured for an amount equal to 50% of your amount. Your amount is not reduced.

3. If there are eligible children but no spouse, the children will be insured for an amount equal to 15% of the employee's benefit for each eligible child, subject to a maximum of $25,000. Your amount is not reduced.

R. 118.

Upon the death of his wife, Hansen timely filed a claim with the Fairfield employee benefits administrator for $120,000, or 60% of his principal sum. The employee benefits administrator at Fairfield submitted the claim to Continental. In November 1988 Continental responded by tendering to Hansen a check for $80,000, or 40% of the principal sum. Accompanying the check was a letter from Continental stating that while the language of the policy might be "somewhat confusing," Hansen's wife was only insured for 40% of the principal sum. Hansen refused to cash the check, and demanded payment of $120,000. Continental denied the demand.

On March 17, 1989, Hansen filed suit against Continental in the 152nd District Court of Harris County, Texas, alleging various state law causes of action, including violations of Texas Insurance Code article 21.21, the Texas Deceptive Trade Practices Act, the common law duty of good faith and fair dealing, and a breach of contract. Continental removed the case to federal court on the basis of federal question jurisdiction. Continental contended that the group accident insurance plan of Fairfield Industries was an "employee welfare benefit plan" covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). Having

---

**2.** This booklet contains, on pages one through five, what is called in ERISA jargon the "Summary Plan Description." *See* Part II.E. below. The booklet, including the Summary Plan Description, was prepared by Continental, but there is some dispute as to who distributed the booklet to Fairfield employees.

removed the case, Continental moved for summary judgment on the basis of ERISA's preemption of state laws that relate to employee welfare benefit plans. Hansen responded in the alternative. He first argued that the Fairfield plan was not covered by ERISA, and moved to remand the case to state court for lack of federal subject matter jurisdiction. In the alternative Hansen argued that if the plan was covered by ERISA, that summary judgment should be granted in his favor.

The federal district court held that the Fairfield plan was an employee welfare benefit plan covered by ERISA, and therefore refused to remand the case to the state court. The federal district court went on to hold, however, that Continental in fact had violated certain ERISA provisions, and granted summary judgment in favor of Hansen, ordering Continental to pay Hansen $120,000 plus interest and attorney's fees. Continental appeals from that judgment. Hansen cross-appeals,[3] arguing that the district court erred in finding that the Fairfield plan was an employee welfare benefit plan within the meaning of ERISA.

## II. Discussion

### A. *Jurisdiction of this Appeal*

■ Before turning to the merits of this ERISA dispute, the Court must first address a jurisdictional matter. The district court originally entered its judgment on May 18, 1990. Both parties filed timely notices of appeal. On May 24, 1990, Continental moved for reconsideration. The district court denied this request on June 22, and both parties again filed timely notices of appeal. On July 12 Hansen moved for modification of the judgment to allow additional interest on the judgment, and the district court granted the motion on August 13. Once again, both parties filed timely notices of appeal. On December 7, 1990, however, a panel of this Court determined that the district court had been divested of jurisdiction of this case before it

entered its order of August 13. Accordingly, the panel ruled that the order of August 13 was null and void, and remanded the case for reentry of that order. The panel explicitly stated that this Court would retain jurisdiction of the case, holding it in abeyance until the order could be reentered.

The district court subsequently reentered its order modifying the judgment. The parties did not file new notices of appeal. Ordinarily, they would be required to do so. *See* Fed.R.App.P. 4(a)(4); *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 925 F.2d 812 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). However, since this Court explicitly retained jurisdiction of this case, no new notices of appeal were required to vest this Court with appellate jurisdiction. *See Brown v. United Ins. Co. of America*, 807 F.2d 1239, 1241 n. 1, 1243 (5th Cir.1987). Consequently, we perceive no jurisdictional defect and may proceed to the merits of the case.

### B. *Standard of Review*

This Court reviews a summary judgment under the same rules that prevail in the district court. *Martin v. John W. Stone Oil Dist., Inc.*, 819 F.2d 547, 548 (5th Cir. 1987). That is, this Court asks whether the pleadings, discovery, and affidavits, if any, show that there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law. *Id. See also* Fed.R.Civ.P. 56(c). In making this assessment, the Court must draw all factual inferences in favor of the party opposing summary judgment. *Degan v. Ford Motor Co.*, 869 F.2d 889, 892 (5th Cir.1989).

### C. *Employee Welfare Benefit Plans*

1. Statutory and Regulatory Framework

"Congress enacted ERISA," Judge Godbold has written, "to protect working

---

**3.** Pursuant to Fed.R.App.P. 28(h) and a previous order of this Court, Hansen has been designated "Appellant" and "Cross–Appellee" for purposes

of this appeal, even though Continental was first to file a notice of appeal.

men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982) (en banc). To that end, ERISA applies to any "employee benefit plan" if that plan is established or maintained by any employer or employee organization engaged in interstate commerce, or in any industry or activity affecting interstate commerce. 29 U.S.C. § 1003(a); *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240 (5th Cir. 1990); Donovan, 688 F.2d at 1370. There are two types of "employee benefit plans": "employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(3). This case concerns only the first of these, an "employee welfare benefit plan."

> ERISA defines an "employee welfare benefit plan" as any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). If the Fairfield "Group Accident Insurance Plan" meets this definition, then the federal courts have jurisdiction of this dispute, and Hansen's only remedies are those provided by ERISA—his state law causes of action are preempted.[4] If, on the other hand, the Fairfield plan does not meet this definition, then ERISA does not apply, and the federal courts have no jurisdiction of Hansen's state law causes of action. Accordingly, a great deal hangs on the determination of whether the Fairfield plan is an ERISA plan.

■ Whether a particular set of insurance arrangements constitute an "employee welfare benefit plan" is a question of fact. *Gahn v. Allstate Life Ins. Co.,* 926

F.2d 1449, 1451 (5th Cir.1991). This factual determination is governed by a set of well established legal standards. First, the Department of Labor, pursuant to authority granted to it by Congress, has promulgated regulations providing that certain insurance and other benefit plans are *excluded from* ERISA's coverage. If the Fairfield plan meets the criteria set forth in the Department of Labor regulations, then ERISA does not cover that plan, and the inquiry is ended. *Kidder v. H & B Marine, Inc.,* 932 F.2d 347, 351 (5th Cir.1991); *Gahn,* 926 F.2d at 1452. If, however, the Fairfield plan does not meet the criteria for exclusion from ERISA coverage in the Department of Labor regulations, then the court must go on to determine whether the plan meets the criteria adopted in this circuit which determine what plans *are* covered by ERISA. That is, the fact that a plan does not meet the Department of Labor regulations for exclusion from ERISA does not mean that the plan is necessarily covered by ERISA. *Kidder,* 932 F.2d at 351–52; *Gahn,* 926 F.2d at 1452. Put another way, the plans *excluded from* ERISA coverage by the Department of Labor regulations are not the only plans not covered by ERISA.

### 2. The Department of Labor Regulations

■ The Department of Labor regulations provide that the term "employee welfare benefit plan":

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll

---

4. *See* Part II.D. below.

deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j). Group insurance plans which meet each of these criteria are excluded from ERISA's coverage. *Kidder,* 932 F.2d at 351; *Gahn,* 926 F.2d at 1452; *Memorial Hospital,* 904 F.2d at 241 n. 6.

There is no dispute here that the Fairfield "Group Accident Insurance Plan" meets the first, second, and fourth of these criteria: Fairfield made no contributions to the program, participation in the program was completely voluntary, and Fairfield received no compensation in connection with the program. The only question is whether Fairfield's involvement in the program was sufficiently limited to meet the third of these requirements—that the employer's functions with respect to the program be limited *solely* to permitting the insurer to publicize the program to its employees, collecting premiums, and remitting them to the insurer.

Fairfield's involvement was not so limited. The evidence presented to the district court in support of the summary judgment motions clearly shows that Fairfield endorsed the plan, an action which the regulations specifically forbid. The booklet distributed in Fairfield's name encouraged employees to "give the program careful consideration," as it could be "a valuable supplement to your existing coverages." In addition, Fairfield employed a full time employee benefits administrator, who accepted claim forms from employees and submitted them to the insurer. Accordingly, Fairfield's sole function was not to allow the insurer to publicize the program and to collect premiums, and the Department of Labor regulations do not exclude the Fairfield "Group Accident Insurance Plan" from ERISA.

### 3. The Fifth Circuit's Tests for Determining What Plans are ERISA Plans

As noted above, the fact that the Fairfield plan is not excluded from ERISA by the Department of Labor regulations does not necessarily mean that the plan is covered by ERISA. Further inquiry is required. By its terms, ERISA applies only to those employee welfare benefit plans that are established or maintained by an employer for the purpose of providing certain benefits to its employees. 29 U.S.C. § 1002(1). As this language suggests, there are two elements to an ERISA plan: first, it must be established or maintained by an employer, and second, the employer must have a certain intent—a purpose to provide benefits to its employees.

Before a court can ask whether a plan is an ERISA plan, however, it must first satisfy itself that there is in fact a "plan" at all. This inquiry is governed by a test first articulated by our colleagues on the Eleventh Circuit:

In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

*Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc). *See also Memorial Hospital,* 904 F.2d at 240–41 (adopting *Donovan* for the Fifth Circuit). Fairfield Industries' "Group Accident Insurance Plan" meets these criteria: a reasonable person would easily conclude that the intended benefits were accidental death and dismemberment insurance, that the beneficiaries were Fairfield's employees and their dependents, that the premiums were paid by the employees, and that benefits would be received by submitting claims to the Fairfield employee benefits administrator, who would submit them to the insurer.

The fact that a "plan" exists, however, does not necessarily mean that the plan is an ERISA plan. As the Eleventh Circuit noted, "an employer or employee organiza-

tion, ... and not individual employees ... must establish or maintain the plan, fund, or program." *Donovan,* 688 F.2d at 1373. In addition, as noted above, the statute requires that the employer have established or maintained the program with a purpose of providing certain benefits to its employees. 29 U.S.C. § 1002(1).

■ To determine whether an employer "established or maintained" an employee benefit plan, "the court should [focus] on the employer ... and [its] involvement with the administration of the plan." *Gahn,* 926 F.2d at 1452. Thus, if an employer does no more than purchase insurance for her employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, she has not established an ERISA plan. *Kidder,* 932 F.2d at 353; *Memorial Hospital,* 904 F.2d at 242. As this Court explained in one of its early cases on the subject,

> [c]onsidering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits.

*Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

In addition to some meaningful degree of participation by the employer in the creation or administration of the plan, the statute requires that the employer have had a purpose to provide health insurance, accident insurance, or other specified types of benefits to its employees. 29 U.S.C. § 1002(1). Thus, this Court has held that, in a case involving the purchase of a group insurance policy, the evidence must show that the employer had an "intent to provide its employees with a welfare benefit program through the purchase and maintenance of [the] group insurance policy." *Memorial Hospital,* 904 F.2d at 241. *See also Scott v. American Chambers Life Ins. Co.,* No. 90–4824, unpublished op. at 6

[934 F.2d 1261 (table) ] (5th Cir. May 28, 1991) (relying on *Memorial Hospital* and holding that "[t]he evidence in this case ... establishes [the employer's] intent to establish an employee welfare benefit plan."); *Foxworth v. Durham Life Ins. Co.,* 745 F.Supp. 1227, 1230 (S.D.Miss.1990) (under *Memorial Hospital,* "in order for an employee welfare benefit plan to exist, there must be two things: An intent to benefit employees ... and the carrying out of that intent through the provision of benefits of the nature described in 29 U.S.C. § 1002(1) and (2)").

Evaluated under these standards, this Court concludes that the Fairfield "Group Accident Insurance Plan" was an ERISA plan. Although Fairfield did not purchase the insurance for its employees, it did—in the language of *Taggart*—assume some responsibility for the administration of the program and the payment of benefits, by providing a full time employee benefits administrator who accepted claim forms from employees and submitted them to the insurer. In addition, Fairfield clearly signalled its intent to provide these benefits for its employees. There is no dispute that Fairfield had established and maintained other types of employee benefit plans for its employees—for instance, a health insurance program—that clearly fell within ERISA's coverage. The "Group Accident Insurance Plan" was presented to Fairfield employees as a supplement to those other benefit plans. A booklet bearing Fairfield Industries' name and corporate logo was given to all employees; the booklet encouraged the employees to consider carefully participating in the group accidental death and dismemberment plan, as it would be "a valuable supplement to your existing coverages."

In sum, this Court holds that the evidence demonstrates that the Fairfield plan was an employee welfare benefit plan within the meaning of ERISA. Accordingly, this action was properly removed to federal court, as ERISA grants federal courts jurisdiction of actions brought to recover benefits or enforce rights under the terms of an ERISA plan. 29 U.S.C. § 1132(e).

### D. Preemption of Hansen's State Law Claims

■ The determination that the Fairfield plan is an ERISA plan is tantamount to a determination that Hansen's state law causes of action are barred. ERISA contains a broad preemption provision—its provisions "supersede any and all State laws insofar as they may ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). This language, the Supreme Court has held, is "deliberately expansive," and is designed to make regulation of employee benefit plans an exclusively federal concern. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Moreover, the Supreme Court has announced that the term "relate to" in the preemption provision should be given its broadest common sense meaning: a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

Hansen argues, however, that his claims under article 21.21 of the Texas Insurance Code—claims for misrepresentation, fraud, and deceptive practices—are not preempted by virtue of ERISA's "savings clause." The clause Hansen relies on provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Hansen contends, quite logically, that since his claims arise under the Texas Insurance Code—a code which, presumably, regulates the business of insurance—those claims are saved from preemption.

■ Unfortunately for Hansen, however, this Court has already rejected his argument. Relying on the Supreme Court's decision in *Pilot Life,* this Court has held that claims to recover benefits or for improper handling of insurance claims

are barred by ERISA's preemption provision. *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 763–64 (5th Cir.1989). Indeed, *Ramirez* specifically held that claims brought under article 21.21 of the Texas Insurance Code are preempted. *Id.* The Supreme Court has held that common law tort actions that relate to an employee welfare plan, but are nonspecific to the business of insurance, are also preempted by ERISA. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In short, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B).[5] *Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989).

Finally, Hansen argues that if his state law claims are preempted, he may be left with no adequate remedy for fraud or misrepresentation by Continental. Even if Hansen is correct that ERISA provides no adequate remedy, however, his state law claims would still be preempted. This Court has held that ERISA's preemption provision bars state law causes of action even though such preemption may leave a victim of fraud or misrepresentation without a remedy. *Lee v. E.I. DuPont de Nemours & Co.,* 894 F.2d 755, 757 (5th Cir. 1990); *Degan,* 869 F.2d at 895. Several other circuits have reached the same conclusion. *See, e.g., Straub v. Western Union Tel. Co.,* 851 F.2d 1262, 1265–66 (10th Cir.1988); *Northwest Administrators, Inc. v. B.V. & B.R., Inc.,* 813 F.2d 223, 226–27 (9th Cir.1987); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986).

### E. The Amount Hansen is Entitled to Recover

Hansen argues that if his state law claims are preempted by ERISA, he is at least entitled to recover $120,000 under the terms set out in the booklet provided to all Fairfield employees. Continental asserts

---

**5.** 29 U.S.C. § 1132(a)(1)(B) provides:

A civil action may be brought—
(1) by a participant or a beneficiary—* * *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

that Hansen is only due $80,000 under the terms of the policy.

ERISA requires that plan participants be provided with an accurate, comprehensive, easy to understand summary of the plan.

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries.... The summary plan description shall ... be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a)(1). The purpose of such a provision is obvious: "It is grossly unfair to ... disqualify [an employee] from benefits if ... [the] conditions [which lead to the disqualification] were stated in a misleading or incomprehensible manner in the plan booklets." H.R.Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4646.

The "summary plan description" provided to Fairfield employees was contained in the booklet described in Part I above. Pages one through five of that booklet constitute the summary plan description; those pages include summaries of the plan's eligibility requirements, its coverage, its exclusions, the benefits provided, premiums, and the like. A certificate of insurance—the policy itself—is reproduced in pages six through ten of the booklet. Of course, the certificate of insurance, by definition, can be no part of a "summary" of the plan; the summary and the certificate are distinct documents, even though printed in one booklet.

Hansen argues that under the terms of the summary plan description he is entitled to benefits of $120,000, or 60% of his principal sum. He cites the language from the summary plan description that appears on page four of the booklet:

> Your spouse will be insured as follows:

> 1. If there are eligible children, your spouse will be insured for an amount equal to 40% of the employee's benefit and an amount equal to 10% of the employee's benefit for each eligible child.

R. 118. Since Hansen had two eligible children, he contends that upon his wife's accidental death he is entitled to recover 60% of his principal sum—40% for his wife, and an additional 10% for each of his children. As Hansen's principal sum was $200,000, he demands $120,000.

Continental contends, on the other hand, that under the terms of the policy—as set out both in the certificate of insurance and the master policy form—Hansen is entitled to recover only 40% of his principal sum as a result of his wife's death. The certificate of insurance provides that the employee's spouse will be covered for

> (1) 50% of the Principal Sum applicable to the employee if there are no dependent children insured at the time of loss; or

> (2) 40% of the Principal Sum applicable to the employee if there are dependent children insured at the time of loss.

R. 120. Similarly, the master policy [6] provides

> Eligible spouses of insured employees will be insured for an amount equal to 50% of the employee's Principal Sum Amount. If there are dependent children, this amount will reduce to 40%. Each eligible child will be insured for an amount equal to 10% of the employee's Principal Sum Amount, if there is a spouse, subject to a maximum of $25,000. If there is no spouse this amount will be increased to 15%, subject to a maximum of $25,000.

R. 157. Under these provisions Hansen would recover only 40% of his principal sum, or $80,000. Continental advances three arguments in support of its position that these provisions should govern this

---

**6.** It is not clear from the record that the master policy was ever made available to Fairfield employees, or whether Hansen ever received it or read it. If the master policy was not provided to Hansen, then Continental's argument that its terms should prevail over those known to Hansen is significantly weakened.

case, so that Hansen is entitled to recover only $80,000 as a result of the death of his wife. None of Continental's arguments has merit.

### 1. Taking the Summary Plan Description as a Whole

■ Continental acknowledged, in its letter denying Hansen's demand for $120,000, that the summary plan description is "somewhat confusing." Nonetheless, Continental argued to the district court and argues to this Court that the summary plan description must be read "as a whole," and that the summary plan description, taken as a whole, is neither ambiguous nor in conflict with the master policy. On one point Continental is certainly correct: the summary plan description must be read as a whole. It would be error to attend only to one paragraph, page, or portion of the summary. *See Sharron v. Amalgamated Ins. Agency Servs., Inc.,* 704 F.2d 562, 566–67 (11th Cir.1983) (To "focus on only one page of the summary [would] represent[ ] an unrealistically narrow view of how a reasonably prudent employee would read and review this important document.").

The rest of Continental's argument, however, is not as well taken. Continental contends that the certificate of insurance which appears at the back of the booklet given to Fairfield employees should be considered to be part of the summary plan description, and that the language of the certificate of insurance resolves any ambiguity by making clear that Hansen is entitled to only 40% of his principal sum. This argument makes no sense. The certificate of insurance, which sets out the full terms of the policy, is no part of the summary plan description. Continental confounds the *policy* with a *summary* of the policy, collapsing two distinct documents into one. By definition, a summary description of the policy does not reproduce each and every term, word for word, of the policy. Indeed,

the very purpose of having a summary description of the policy is to enable the average participant in the plan to understand readily the general features of the policy, precisely so that the average participant need *not* become expert in each and every one of the requirements, provisos, conditions, and qualifications of the policy and its legal terminology. Thus, although Continental correctly states the rule that the summary plan description must be read as a whole, that rule is of no help to Continental.[7] The summary plan description is at least ambiguous, if not in outright conflict with both the certificate of insurance and the master policy.

### 2. The Summary Plan Description versus the Terms of the Policy

■ Continental next argues that if the summary plan description is ambiguous, or in conflict with the master policy, then the terms of the master policy should govern. This position is similarly wanting. ERISA requires, in no uncertain terms, that the summary plan description be "accurate" and "sufficiently comprehensive to reasonably apprise" plan participants of their rights and obligations under the plan. 29 U.S.C. § 1022. The rule that Continental urges would eviscerate this requirement. Under Continental's proposed rule the summary would not need to be accurate or comprehensive—if there were an ambiguity in the summary or an inaccuracy that put the summary in conflict with the policy, that ambiguity or inaccuracy would be cured by the policy itself. The result would be that before a participant in the plan could make any use of the summary, she would have to compare the summary to the policy to make sure that the summary was unambiguous, accurate, and not in conflict with the policy. Of course, if a participant has to read and understand the policy

---

**7.** Of course, even if Continental were correct that the certificate of insurance should be considered part of the summary plan description, Continental's argument would still be unsound as a factual matter. That is, including the terms of the certificate of insurance in the summary plan description would not render the summary

plan description unambiguous, or resolve the conflict between the summary and the master policy. At least one provision of the summary plan description, taken in its most natural reading, would entitle Hansen to 60% of the principal sum.

in order to make use of the summary, then the summary is of no use at all.

Our colleagues on the Eleventh Circuit have encountered a situation quite similar to this one, and their reasoning is persuasive. Faced with an argument that "if a conflict arose between the plan and the summary, the plan should prevail," that Court held that

> [s]uch an assertion defeats the purpose of the summary. It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee....

*McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (5th Cir.1985). The Sixth Circuit has similarly concluded that in case of a conflict between the summary plan description and the master policy, the summary controls. *See Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988) ("statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern"). Like the Sixth and Eleventh Circuits, this Court holds that the summary plan description is binding, and that if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern. Any other rule would be, as the Congress recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary.

■ Our conclusion draws support from other quarters as well. In contracts of insurance generally, ambiguities are resolved against the drafter. *See, e.g., City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 15 (5th Cir.1991). The same rule should apply here; the ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter. Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those

who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask. And it is especially not a lot to ask in return for the protection afforded by ERISA's preemption of state law causes of action—causes of action which threaten considerably greater liability than that allowed by ERISA.

■ Finally, in keeping with our conclusion that statements in the summary plan description are binding this Court must also reject Continental's argument that it can disclaim the binding effect of the summary plan description. Continental attempts to avoid the binding effect of its statements in the summary plan description on the basis of language included at the tail end of the booklet distributed to Fairfield employees which states that

> [t]his is a description of the benefits provided and does not contain all the terms and conditions of the Master Policy. All rights and benefits will be governed by the Master Policy (Policy Form Number A & HUN 10976) issued by the Commercial Ins. Co. of Newark, N.J., 80 Maiden Lane, New York, N.Y. 10038.

R. 121. Ruling that the statements of the summary plan description are binding necessarily forecloses Continental's argument about this disclaimer. To give effect to such a disclaimer would wholly undermine the rule that the statements of the summary plan description are binding. Indeed, if the insurer could escape the binding effect of the summary simply by adding a disclaimer to the summary, the insurer could escape the requirement of an accurate and comprehensive summary plan description. Accordingly, this Court holds, as a necessary corollary to its holding that the statements in the summary plan description are binding, that drafters of a summary plan description may not disclaim its binding nature.[8]

---

8. The Court understands that ERISA's requirement of a summary plan description necessarily requires abbreviation or omission of some of the detail of the plan or policy. Indeed, the

### 3. Reliance on the Summary Plan Description

Continental next argues that Hansen must demonstrate that he relied on the disputed portion of the summary plan description in order to recover more than the $80,000 allowed by the master policy. Whatever the merit of Continental's position, it is of no avail here. There simply is no reliance issue in this case. Even if Continental is correct that Hansen must demonstrate that he relied on the disputed language in the summary, Hansen would prevail. Hansen presented ample evidence of reliance: his affidavit in support of summary judgment states that he read the plan summary, including the paragraph in question, and understood it to mean that his wife was insured for 60% of his principal amount. The affidavit of Fairfield's employee benefits administrator was to the same effect: he considered the summary clearly provided 60% coverage of Hansen's wife. Continental presented no evidence to the contrary. Thus, because Hansen has presented adequate evidence of reliance, and his evidence is uncontroverted, the district court's judgment in favor of Hansen must be affirmed even assuming that Hansen is required to demonstrate reliance.[9] Accordingly, this Court leaves for another day the question of whether a plaintiff in an action such as this must demonstrate reliance on the summary plan description.

### F. *Prejudgment Interest* [10]

Finally, Continental argues that the district court erred in its award to Hansen of prejudgment interest at a rate of 10%. When it initially entered judgment in this case, the district court awarded Hansen prejudgment interest at the rate of 6%; Hansen moved to modify the judgment, seeking prejudgment interest at the rate of 10%. The district court granted the motion, modifying the judgment to include prejudgment interest at a rate of 10%.

 Continental appeals, arguing that federal law, not state law, governs the rate of interest in this case, and that federal law provides for prejudgment interest of 7.8%. As a general matter, Continental is correct that where a cause of action arises out of a federal statute, federal law governs the scope of the remedy available to plaintiffs, including whether prejudgment interest is to be allowed and at what rate. *See F.D. Rich, Inc. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 127, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974); *United States ex rel. Georgia Electric Supply v. United States Fidelity & Guaranty Co.*, 656 F.2d 993, 997 (5th Cir. Unit B 1981).

---

very idea of the summary is to provide an accurate, but abbreviated, description of the plan provisions; its purpose is to simplify and explain the policy. Thus, it is not inappropriate to refer to the plan or policy itself to fill in details, or to provide other incidental information not included in the summary. It is inappropriate, however, to refer to the plan or policy to resolve an ambiguity against a plan participant, or to vary or limit the terms described in the summary. Allowing reference to the policy for such purposes would undermine the requirement of an accurate summary, and upset Congress' scheme. This Court is not willing or able to cause such a disruption of Congressionally drawn rules; all this Court may do is ensure that the rules laid down by Congress are strictly enforced.

9. Furthermore, Continental raises the argument about reliance for the first time on appeal; Continental did not raise the issue below. It is settled law that a party attacking a summary judgment on appeal cannot do so on theories not presented to the district court. *See, e.g., Golden Oil Co., Inc. v. Exxon Co., U.S.A.*, 543

F.2d 548, 551 (5th Cir.1976) ("because [party appealing from summary judgment] did not advance these theories before the district court, [court of appeals] need not consider them"); *Excavators & Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 320 (5th Cir.1973) ("it is well established that, in the absence of a miscarriage of justice, issues not raised or presented in the lower court will not be considered for the first time on appeal").

10. Continental's argument concerning prejudgment interest is not the only remaining issue in this case. Hansen has raised certain arguments concerning the district court's award of postjudgment interest, its failure to award costs to Hansen, and the amount of attorney's fees it awarded to Hansen. In order to prevail on any of these issues, Hansen would have to demonstrate that the district court had abused its discretion. Hansen has not done so. Accordingly, the district court's judgment on each of these matters is affirmed.

 Such a rule, however, often leads back to state law. While there is a generally applicable federal statute governing postjudgment interest, *see* 28 U.S.C. § 1961(a), there is no equivalent statute governing prejudgment interest.[11] Continental would apply the rate set down in the postjudgment interest statute to awards of prejudgment interest. This Court, however, has already rejected that position: in *United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188 (5th Cir.1987), the plaintiffs in a Miller Act[12] case sought an award of prejudgment interest. Judge Wisdom wrote for the Court that

> [b]ecause the right that [the plaintiff] asserts in this action is provided by the Miller Act [a federal statute], the scope of the remedies afforded that right is a question of federal law. The amount of prejudgment interest is, therefore, a question of federal law. Because the Miller Act is silent on the issue, however, state law is an appropriate source of guidance. In this case, the applicable state law is that of Texas.

*Id.* at 1193 (footnotes omitted). Like the Miller Act, ERISA is silent on the issue of prejudgment interest. Accordingly, this Court holds that when awarding prejudgment interest in an action brought under ERISA, it is appropriate for the district court to look to state law for guidance in determining the rate of interest.

 Texas law does not speak with one voice on the question of interest on judgments. On the one hand, Texas law provides that in contract actions,

> [w]hen no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall

be allowed on all accounts and contracts ascertaining the sum payable....

Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). On the other hand, Texas law provides that

> all judgments ... of the courts of this state earn interest, compounded annually, at the rate published by the consumer credit commissioner in the Texas Register.... [If that rate] is less than 10 percent, the judgment interest rate shall be 10 percent....

Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 2 (Vernon Supp.1991).

Continental contends that if state law governs the rate of prejudgment interest, then the rate should be only 6%. Continental argues that an action to recover benefits under an ERISA plan is most akin to a contract action, and that therefore the applicable rate of interest should be that applicable to contract actions. Continental is undoubtedly correct that an action to recover benefits under an ERISA plan sounds most clearly in contract. *See, e.g., Fogerty v. Metropolitan Life Ins. Co.,* 850 F.2d 430, 432 (8th Cir.1988); *Jenkins v. Local 705 Internat'l Bhd. Teamsters Pension Plan,* 713 F.2d 247, 252–53 (7th Cir.1983). *Cf. McClure v. Zoecon, Inc.,* 936 F.2d 777, 778–79 n. 3 (5th Cir.1991) (noting that cases such as *Fogerty* and *Jenkins* are "well-decided").

Nonetheless, this Court will affirm the district court's award of 10% prejudgment interest. This Court has previously held that, because state law is not binding but merely provides guidance, it is within the discretion of the district court to select an equitable rate of prejudgment interest.

---

11. This Court has held that the postjudgment interest statute does not preclude an award of prejudgment interest. *Guidry v. Booker Drilling Co. (Grace Offshore Co.),* 901 F.2d 485, 488 (5th Cir.1990). Rather, to determine whether an award of prejudgment interest is appropriate, the court must determine whether such an award is precluded by the federal statute that gives rise to the cause of action, and if such an award is not precluded, whether it would further the congressional policies embodied in the act. *Id.*
ERISA does not preclude an award of prejudgment interest. Furthermore, the parties do not

dispute, and we have no doubt, that an award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation.

12. 40 U.S.C. §§ 270a–270d. The Miller Act provides protection for subcontractors and their suppliers engaged in federal construction projects, in lieu of state liens, which cannot attach to federal property. *Randall & Blake,* 817 F.2d at 1189.

*Dallas–Fort Worth Regional Airport Bd. v. Combustion Equip. Assocs., Inc.,* 623 F.2d 1032, 1041 (5th Cir.1980) (noting that Texas case law permits courts at their discretion to award equitable prejudgment interest). While this rule would permit the district court to apply the 6% rate of art. 5069–1.03, it also permits the district court to select another rate. We cannot say that the district court abused its discretion by selecting the 10% rate set forth in art. 5069–1.05, which, by its terms, applies to "all judgments."

### III. Conclusion

For the reasons stated, the judgment of the district court is affirmed.

AFFIRMED.

GARWOOD, Circuit Judge, concurring:

I concur in Judge Johnson's opinion and merely emphasize that, respecting sections 1 and 2 of part IIE thereof, we are speaking to a situation in which the circumstances are as Judge Johnson characterizes them in footnote 7 of his opinion.