798

James D. BARRETT and Shawn
E. Barrett, Plaintiffs,

v.

THE INSURANCE COMPANY OF
NORTH AMERICA; The Trustees of
the National Group Benefits Insurance
Trust; SRC Insurance Services, Inc.,
Defendants.

Civ. A. No. 92–G–2879–S.

United States District Court,
N.D. Alabama, S.D.

Feb. 16, 1993.

G. Edward Coey, Chamblee & Associates, Birmingham, AL, for plaintiffs.

William T. Mills II, Porterfield, Harper & Mills, P.A., Birmingham, AL, for defendants.

## MEMORANDUM OPINION

GUIN, Senior District Judge.

Security Technical Services, Inc. [hereinafter Security], established and maintained an Employee Retirement Income Security Act [hereinafter ERISA] employee welfare benefit plan[1] for the purpose of providing benefits to its employees,[2] including plaintiff James D. Barrett.

Among the benefits provided were those set forth under an insurance plan issued by Insurance Company of North America to the Trustees of the National Group Benefits Insurance Trust and its subscribing companies, including Security. The health and accident insurance plan, number SGA–748–313, offered accidental death and medical expense coverage. Participation in the plan was voluntary. Security's payroll manager served as the plan administrator, and was identified as such in the summary plan description which was distributed to its employees. Security collected the full premiums[3] for the plan from its employees and remitted them to Life Insurance Company of North America.

Security distributed booklets describing the plans to its employees upon the commencement of their employment. Enrollment application within 31 days of employment or the Plan effective date prompted

---

1. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1).

2. Affidavit of Bartlett G. Bretz, Chairman of the Board of Security Technical Services, Inc. Among the benefits provided were accident and loss of life, medical expense coverage, and hospital confinement.

3. Security did not pay any portion of the premium.

automatic approval. Thereafter, applicants had to provide acceptable evidence of good health in order to obtain coverage. The booklet, which bears the corporate logo, is entitled "Security Technical Services, Inc., for Full and Part Time Hourly Employees and their Dependents."

Language in the plan summary provided to employees refers to the ERISA plan in several instances. Under the section entitled "CONTINUATION OF HEALTH COVERAGE," the participant or his dependent is advised how to continue coverage in the event of employment termination, reduction of work hours, death of the employee, divorce or legal separation, advent of Medicare eligibility, loss of a dependent's eligibility, or loss of coverage for retired employees and eligible dependents due to the employer's filing for Chapter 11 Bankruptcy.[4] The language following the itemization of qualifying events is set forth below:

* In these cases, the employee or eligible dependent is responsible for notifying the "ERISA" Plan Administrator or employer within 60 days after the later of (a) the date of the qualifying event or (b) the date the employee would lose coverage on account of the qualifying event. If the "ERISA" Plan Administrator is not so notified, the dependent will not be given the opportunity to continue coverage.

The "ERISA" Plan Administrator or Employer must, within 14 days of notification of a qualifying event, advise the employee or eligible dependent of the right to continue medical coverage....

Further on, while discussing disability, the participant is advised that in the case of disability, notice of disability must be provided to the ERISA Plan Administrator or the Employer. The same notification is required when the participant is no longer considered disabled. "[T]he ERISA Plan Administrator or Employer must be notified within thirty days of the date a final determination is made that the individual is no longer disabled for purposes of the Social Security Act."

Page seven of the summary devotes six paragraphs to the rights of employees under ERISA. Pertinent language follows:

### STATEMENT OF ERISA RIGHTS

As a participant in the employee benefit plans of the employer, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all plan participants shall be entitled to:

### IMPORTANT INFORMATION ABOUT YOUR COVERAGE

Please keep this packet in a safe place after you have read it. All of the features of your coverage are fully explained in this Plan description, but if you have some questions please ask your supervisor. This is the Summary Plan Description, required by the Employee Retirement Income Security Act of 1974 (ERISA). A full disclosure of your ERISA rights is printed above....

Pursuant to the offerings provided by the Plan, plaintiff James D. Barrett entered into a contract of medical insurance with the defendants on August 1, 1991. Language of the *"PRE–EXISTING CONDITIONS"* paragraph of the policy issued to Mr. Barrett states, in bold print, the following:

We will not pay benefits for a condition for which a Covered Person received medical treatment, care or advice within 6 months before being covered under this policy. This does not apply if either:
  a) he has received no such treatment, care or advice for that condition for 6 straight months after being covered under this policy; or
  b) he has been covered under this policy for 12 months.

On October 3, 1991, plaintiff Shawn E. Barrett underwent surgery in Jefferson County, Alabama, and incurred medical, hospital and doctor bills. Defendants denied the claims and refused payment.

**4.** These are considered qualifying events and are referred to hereafter as qualifying events.

Plaintiffs thereafter, on November 3, 1992, in the Circuit Court of Jefferson County, Alabama, sued for embarrassment, emotional stress, and mental anguish resulting from the breach of contract.

Defendants removed the case to this court and filed a motion to dismiss on December 14, 1992, on the grounds that the plaintiff's complaint failed to state a claim on which relief could be granted and that ERISA preempted all of plaintiff's state law claims.

On December 21, 1992, plaintiffs filed an amended complaint adding ERISA counts as alternatives to the first two counts.

In opposing defendants' motion to dismiss, plaintiffs have contended that the medical insurance policy in question is exempted from employee welfare benefit plans pursuant to 29 C.F.R. 2510.3–1(j). The Department of Labor Regulations provide that the term "employee welfare benefit plan" exempts plans under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j).

There is no doubt that the first, second, and fourth criteria listed above apply to Security's plan. Security made no contribution to the program, participation in the program was voluntary, and Security received no compensation in connection with the program. At issue is whether Security endorsed the program or whether its participation was so limited that it meets the third criterion.

In *Hansen v. Continental Insurance Company*, 940 F.2d 971 (5th Cir.1991), the court held that the group accident plan offered to Fairfield employees was an ERISA plan which preempted the insured's claims for misrepresentation, fraud, and deceptive practices. As in the case at bar, the court had to deal with the third criterion set by the Department of Labor. The court held that Fairfield had endorsed the plan. Like Security, Fairfield had circulated a booklet entitled "Group Accident Insurance Plan for the employees of Fairfield Industries." The booklet, which bore the corporate name and logo, encouraged the employees to consider participation in the group accidental death and dismemberment plan as a supplement to existing coverage. Fairfield provided an employee benefits administrator who accepted claim forms from Fairfield employees and submitted them to Continental. The court's decision hinged on the intent of the employer. The circumstances set forth above indicated Fairfield endorsed the plan, an action which the regulations specifically forbid.

The *Hansen* court noted "there are two elements to an ERISA plan: first, it must be established or maintained by an employer, and second, the employer must have a certain intent—a purpose to provide benefits to its employees." 940 F.2d at 977. In weighing the evidence the court concluded: "Fairfield clearly signalled its intent to provide these benefits [accident] for its employees." *Hansen* at 978. Having concluded that the Fairfield plan was an ERISA plan, the court denied the benefits sought. "In short, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B)." *Hansen* at 979.

In the case at bar, as in *Hansen*, Security provided its employees with an accurate, comprehensive summary of the plan. The booklet contained summaries of the plan's eligibility requirements, its coverage, its exclusions, the benefits provided, the pre-

miums, etc. Employees are specifically told that the summary is required by ERISA. Throughout, the booklet refers to and details employee rights under ERISA. Employees are told to discuss or seek advise of a supervisor about anything they do not understand. Additionally, Security identified the plan administrator, authorized to deduct premiums of plan participants and forward them to Life Insurance Company of North America, as "Payroll Manager, Security Technical Services, Inc."

While this court is not bound by the ruling of the Fifth Circuit in *Hansen*, it does find that decision to be persuasive, and it is bound by the rulings of the Eleventh Circuit which has said the following relating to the establishment of an ERISA plan:

A "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an *employee* welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program."

*Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982).

The court holds that surrounding circumstances indicate Security endorsed the ERISA plan, rather than merely publicizing it. The language of the plan and the testimony of its chief executive officer indicate Security intended to establish an ERISA plan for its employees which would provide benefits for accident and loss of life, medical expense coverage, and hospital confinement. Pursuant to its intention, Security did establish and maintain an employee benefit plan. Security's plan is not exempted from employee welfare benefit plans pursuant to 29 C.F.R. 2510.3–1(j). Accordingly, when beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B). The court holds that plaintiffs' state law claims are due to be dismissed.

An order consistent with this opinion is being entered contemporaneously herewith.

DONE and ORDERED.

## ORDER

The above styled cause comes before the court on the December 14, 1992, motion of defendants The Insurance Company of North America, The Trustees of the National Group Benefits Insurance Trust, and SRC Insurance Services, Inc. to dismiss, which this court has taken as a motion for summary judgment. Having considered the motion, the pleadings, the submissions of counsel, and the applicable law, the court is of the opinion that judgment is due the defendants as a matter of law on all state claims for embarrassment, emotional distress, and mental anguish, there being no genuine issue of material fact. Accordingly, in conformity with and pursuant to the memorandum opinion being entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the motion of defendants The Insurance Company of North America, The Trustees of the National Group Benefits Insurance Trust, and SRC Insurance Services, Inc. for summary judgment on state claims for embarrassment, emotional distress, and mental anguish be and it hereby is GRANTED, and said claims are hereby DISMISSED. It is

FURTHER ORDERED, ADJUDGED and DECREED that the demand for a jury be and it hereby is STRICKEN, said demand being preempted under the provisions of the Employee Retirement Income Security Act.

DONE and ORDERED.