Tammy BLAYLOCK, et al., Plaintiffs,

v.

MUTUAL OF NEW YORK LIFE INSURANCE COMPANY,
Defendants.

No. CIV.A.4:01CV174LM.

United States District Court,
S.D. Mississippi,
Eastern Division.

June 17, 2002.

Order correcting and amending
opinion Aug. 30, 2002.

Clinton Chadwell Carter, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, for plaintiffs.

W. Wayne Drinkwater, Jr., J. William Manuel, Jeffrey R. Blackwood, Bradley, Arant, Rose & White, LLP, Jackson, MS, Judson Herben Turner, Andrew B. Johnson, J.S. "Chris" Christie, Jr., Bradley, Arant, Rose & White, LLP, Birmingham, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

These consolidated cases are before the court on plaintiffs' motions to remand. Defendant Mutual of New York Life Insurance Company has responded in opposition to the motions, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motions of certain plaintiffs are due to be granted, while those of other plaintiffs are due to be denied, as set forth herein.

*Background:*

In July 2001, eighty six suits were filed in the Circuit Courts of Noxubee and Kemper Counties alleging, *inter alia,* fraud by Mutual of New York Life Insurance Company (MLOA) in the sale of certain insurance policies. With the exception of each plaintiff's allegation as to the specific amount of benefits it was represented would be provided, the plaintiffs' complaints were identical. All alleged that "a representative of MLOA approached [them] about purchasing insurance con-

taining a retirement fund;" that defendant "misrepresented to [them] that [they] could purchase a life insurance policy(s) containing a retirement fund from Defendants that would provide Plaintiff [a specified sum] for retirement, with [that same sum] death benefits being maintained;" that defendants made "false, fraudulent, and misleading representations about the benefits of the policy(s) of insurance to be gained for the policyholder through the purchase of the policy(s) of insurance;" and that "the policy(s) Plaintiff was purchasing did not contain a retirement fund that would provide Plaintiff [the specified sum represented], with the [specified sum] death benefits being maintained." Plaintiffs alleged that

[a]s a proximate consequence of Defendants' fraud, Plaintiff was injured and damaged as follows: Plaintiff paid premiums on policy(s) that were not as represented; Plaintiff has lost the value of Plaintiff's premiums; Plaintiff has lost interest on Plaintiff's premiums; Plaintiff does not have the policy(s) of insurance that were represented; Plaintiff does not have policy(s) containing a "retirement fund"; Plaintiff has suffered mental anguish and emotional distress, and will continue to do so; and Plaintiff has been otherwise injured and damaged.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs but not to exceed Seventy-four Thousand Nine Hundred Ninety Nine Dollars ($74,999.00) in the

aggregate for all claims set forth in this cause.

In other words, plaintiffs' theory in these cases is that MLOA misrepresented that the life insurance policies sold to them would provide retirement benefits at retirement age when the policies, in fact, provided no such benefits.[1]

On August 13, 2001, MONY separately removed each of these cases to the United States District Court for the Southern District of Mississippi. In all the cases, MONY claimed that jurisdiction was proper pursuant to 28 U.S.C. § 1332 based on diversity of citizenship, and in fifty-four of the cases, MONY asserted 28 U.S.C. § 1331 federal question as an additional basis of jurisdiction, on the ground that the insurance plans at issue in these cases are governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Since removal, MLOA, conceding that the policies that are the subject of the complaints brought by employees or former employees of Boral Brick are not subject to ERISA, has withdrawn its assertion of federal question jurisdiction in the twelve of those fifty-four cases having been brought by Boral Brick employees.

All these eighty-six removed cases, which have been consolidated for discovery and pretrial purposes, are now before the court for consideration of plaintiffs' motions to remand.[2]

*Diversity Jurisdiction*

In all the consolidated cases, it is undisputed that there is complete diversity of citizenship. The issue is whether the

---

1. It is not entirely clear from plaintiffs' complaint that their claims are limited to misrepresentations as to retirement benefits the policies would provide, as they have included allegations concerning representations as to premiums for life insurance coverage as well. For purposes of plaintiffs' motion, the court construes the complaint broadly so as to ensure that it has accounted for all of plaintiffs' potential claims.

2. A list of all the consolidated cases is Appendix A hereto.

amount in controversy satisfies the $75,000 threshold for federal jurisdiction. *See* 28 U.S.C. § 1332 (district courts have original jurisdiction of civil actions where matter in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" and is between citizens of different states). In the notice of removal, MLOA acknowledged that plaintiffs had all prayed for damages in their ad damnum clause in an amount less than $75,000, but defendant asserted that this damages demand was not made in good faith inasmuch as the complaint's other allegations are inconsistent with the amount set forth in the prayer for damages and reflect an actual amount in controversy in excess of $75,000. Though plaintiffs denied this was so and insisted that the amount in controversy gleaned from their complaint was no greater than the $74,999 they had demanded, each plaintiff[3] nevertheless appended as an exhibit to the motion to remand his or her executed affidavit containing the following recitation:

> I do not intend to seek damages in excess of the total amount of $74,999.00 exclusive of interest and costs. I irrevocably agree to the entry of an order of this Court which places an irrevocable cap upon the amount of damages which may be sought by or awarded to me in this case, and that this cap shall be set at $74,999.00 exclusive of interest and costs. I will under no circumstances accept a judgment or settlement in this case in excess of $74,999.00. I agree, acknowledge, and understand that this agreement is binding upon me, my heirs, executors, administrators, and assigns, and cannot be rescinded or revoked under any circumstances regardless of any development which may occur during the investigation, discovery, pretrial, or trial of this action.

The principles governing resolution of this amount in controversy issue are rather well settled. In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court held that a plaintiff who does not "desire to try his case in federal court ... may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury*, 303 U.S. at 294, 58 S.Ct. at 593; *see also Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) ("[I]f a plaintiff pleads damages less than the jurisdictional amount, he generally can bar a defendant from removal."). However, the amount in controversy inquiry "does not end merely because the plaintiff alleges damages below the threshold," *De Aguilar v. Boeing Co. (De Aguilar II)*, 47 F.3d 1404, 1410 (5th Cir.1995), for "[t]he face of the plaintiff's pleading will not control if made in bad faith," *id.*

In this vein, the Fifth Circuit has recognized that in states whose procedural rules do not limit a plaintiff's recovery to the amount pled in his or her ad damnum clause, there exists "the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *Id.* at 1410. "Such manipulation," the court has said, "is surely characterized as bad faith." *Id.* (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir.1985), where the court

---

**3.** MLOA points to four plaintiffs who have not submitted an affidavit. However, since the court concludes *infra* that it has federal question jurisdiction over their claims, the court need not consider the effect of their failure to submit affidavits on the amount in controversy issue.

stated that "tactical manipulation [by the] plaintiff cannot ... be condoned"). Thus, in order "to protect defendants from plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand," *id.* at 1411, the Fifth Circuit has adopted the rule that,

> if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint. . . .

As to "[t]he exact extent of the burden on the defendant in this situation," the court has said this:

> [T]he plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount. The preponderance burden forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [$75,000].

*Id.* at 1412.[4]

■ In the removal context, "the jurisdictional facts that support removal must be judged at the time of removal." *Gebbia v. Wal–Mart Stores, Inc.,* 233 F.3d 880, 882 (5th Cir.2000). Thus, if it is shown that the amount in controversy at the time of removal exceeded the jurisdictional minimum, then the federal court will have removal jurisdiction regardless of events that may thereafter transpire—which is to say, " 'a plaintiff may not defeat removal by subsequently *changing* his damage request, because post-removal events cannot deprive a court of jurisdiction once it has attached.' " *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia v. Dow Quimica de Colombia S.A.,* 988 F.2d 559, 565 (5th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994) (citing *St. Paul Mercury,* 303 U.S. at 292, 58 S.Ct. at 592); *St. Paul Mercury,* 303 U.S. at 292, 58 S.Ct. at 592 (stating that "though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction"); *Gebbia,* 233 F.3d at 883 (stating that "if it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction").

■ However, "post-removal affidavits sometimes can be relevant where the jurisdictional amount question is unresolved." *De Aguilar II,* 47 F.3d at 1406 (citing *Dow Quimica,* 988 F.2d at 565). Such affidavits, when submitted to "clarify a petition that previously left the jurisdictional ques-

**4.** Mississippi Rule of Civil Procedure 54(c) states:

> [E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings; however, final judgment shall not be entered for a mone-

tary amount greater than that demanded in the pleadings or amended pleadings.

MLOA argues that since plaintiffs' pleadings could be amended at the close of trial, and even after a jury verdict, to conform to the evidence presented and/or to the jury's verdict, then Mississippi's procedural rules do not foreclose the kind of jurisdictional manipulation that these principles are designed to guard against.

tion ambiguous," are not considered a post-removal event and may be properly considered, since in that circumstance, "the court is still examining the jurisdictional facts as of the time the case is removed, but the court is considering information submitted after removal," *Dow Quimica*, 988 F.2d at 565; *see also H & D Tire and Automotive–Hardware Inc. v. Pitney Bowes Inc.*, 250 F.3d 302, 306 (5th Cir.2001) (stating that "if plaintiffs' state court pleadings left jurisdiction ambiguous, a post-removal affidavit violates no principle of *St. Paul Mercury*"); *cf. Marcel v. Pool Co.*, 5 F.3d 81, 85 (5th Cir.1993) ("In cases in which ... the plaintiff, by whatever means, seeks to reduce, rather than clarify, his demand after removal, the plain language of *St. Paul Mercury* and the rationale of *[Dow Quimica]* unequivocally bar remand for want of jurisdictional amount.").

■ In the case at bar, defendant argues that when due consideration is given to the substance of plaintiffs' allegations and the nature and types of damages claimed to have resulted from defendants' alleged misconduct, it becomes evident that the demand for $74,999 in each plaintiff's ad damnum clause is made in bad faith. To the point, MLOA argues plaintiffs' claims for emotional distress damages and punitive damages arising out of alleged intentional fraud are sufficient in and of themselves to establish the requisite amount in controversy to confer federal jurisdiction, particularly since Mississippi juries are notorious for awarding compensatory and punitive damages in fraud cases well in excess of $75,000.[5] It submits further that even were that not the case, when plaintiffs' claims for other items of damage are factored in, then from the face of the complaint, the conclusion is virtually inescapable that the amount in controversy exceeds $75,000, plaintiffs' ad damnum clause notwithstanding. In particular in this regard, it points out that, in fact, "five [of these plaintiffs] involve individual Plaintiffs claiming that they were deprived of at least $75,000 in retirement benefits alone.[6] .. Further ... there are nineteen Plaintiffs amongst the consolidated actions who have greater than $75,000 in controversy based on the combination of their claimed lost retirement benefits and lost insurance coverage as stated in their Complaints."[7] And the

---

5. In fact, the Fifth Circuit recently described as "very conservative" a district court's application of a 6:1 ratio of punitive damages to compensatory damages in calculating an amount in controversy, observing that "[b]ased on other Mississippi awards, it is highly unlikely that [plaintiffs in Mississippi] will be content with seeking a 6:1 ratio." *Arnold v. State Farm Fire and Cas. Co.*, 277 F.3d 772, 776 (5th Cir.2001) (citing *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So.2d 637 (Miss.1998) ($1.25 million in punitive damages awarded on $1,900 actual damages)).

6. Tonia Stewart alleges that she did not receive the $477,990 in retirement benefits represented; Tammy Blaylock did not receive the $97,341 in retirement benefits represented; Ralph Henry did not receive $136,223 in retirement benefits represented; Joe Tate did not receive $79,960 in retirement benefits represented; and Johnnie Griffin did not receive $75,000 in retirement benefits represented. And all these plaintiffs, like all the other plaintiffs, allege that they actually received *no* retirement benefits.

7. These plaintiffs allege misrepresented retirement benefits, as follows: Joseph Beckwith, $50,000; Burt Bonner, $51,872; Thelma Brooks–Geter, $60,000; Kenneth Brown, $50,000; Jimmie Chandler, $51,325; Mary Cheatem, $50,000; Edwina Conner, $50,000; Willie Cunningham, $40,667; Jimmy Green, $51,049; Joe Hopkins, $57,820; Ricky Hyde, $43,157; Willie Ramsey, $57,645; Mabel Sanders, $55,000; Alonzo Smith, $59,114; Charlie Smoot $41,071; Larry Tate, $65,000; Sylvester Tate, $65,000; Karl Wansley, $50,675; and William Nave $41,113.

others' claimed lost benefits, MLOA argues, coupled with their claims for emotional distress and punitive damages, obviously exceed $75,000. It submits that the court must therefore disregard both the ad damnum clause demand and plaintiffs' post-removal affidavits. The court has considered all of defendants' arguments on these points, and finds them to be without merit.

In support of its contention that the demand for emotional distress damages and punitive damages puts the amount in controversy over $75,000, MLOA cites *Chambley v. Employers Insurance of Wausau,* 11 F.Supp.2d 693, 695 (S.D.Miss. 1998), in which Judge Barbour, relative to his conclusion that it was apparent a plaintiff was seeking damages in excess of $75,000, observed that "[j]uries in Mississippi frequently award damages (compensatory and punitive) in excess of $75,000 in actions based on wrongful denial of insurance benefits." But unlike the case at bar, the plaintiff in *Chambley* had failed to allege a specific amount of damages and had not quantified his damages in any way. And in this court's opinion, regardless of whether it might be considered "facially apparent" that a claim for compensatory and punitive damages exceeds the jurisdictional minimum in cases where no specific amount of damages is pled, it is by no means necessarily so in a case where the plaintiff has pled a sum certain that is below the jurisdictional minimum.

Moreover, while many of the plaintiffs do allege amounts of retirement benefits and/or life benefits [8] they claim they understood they were to receive in amounts that exceed or at least approach $75,000, plaintiffs do not contend that they are or would be entitled to recover these benefits and, by their citation to *Boswell v. Liberty National Life Ins. Co.,* 643 So.2d 580, 581 (Ala.1994) (stating that "the injury or damage alleged is that plaintiffs were persuaded, through the fraudulent acts of the defendants, to pay for something they did not receive. In other words, the alleged injury or damage was the payment of greater premiums that were unnecessary because the plaintiffs received no additional coverage . . . ."), they implicitly recognize that this would not be an available remedy.[9]

In summary, then, despite defendant's argument to the contrary, it is not apparent from the face of plaintiffs' respective complaints that the actual amount in controversy exceeded $75,000 at the time of the removal. Viewing the substantive allegations in those complaints in conjunction with plaintiffs' ad damnum demand, reveals, at best, ambiguity on the subject.

Further, the potential for forum manipulation by plaintiffs is foreclosed, in the court's opinion, in the case of most plaintiffs by virtue of plaintiffs' affidavits, in which they have agreed to irrevocably cap their damages demand at $74,999. These

---

8. *See supra* note 1.

9. The court recognizes that the Mississippi Supreme Court has adopted a "benefit of the bargain" measure of damages for cases of fraud. *See Davidson v. Rogers,* 431 So.2d 483, 485 (Miss.1983) (stating, "In *Hunt v. Sherrill,* 195 Miss. 688, 15 So.2d 426 (1943), we discussed the various rules relative to the measure of damages in fraud and deceit cases and aligned ourselves with the majority rule known as the 'benefit-of-the-bargain' rule. In all cases of misrepresentation as to the amount, quality, kind and character of the property purchased, this rule applies, and allows the party defrauded to recover the difference between the real and the represented value of the property."). However, it cannot reasonably be contended that the plaintiffs here could receive the benefit of their bargain only if they received the misrepresented value of policies providing retirement benefits, particularly where none has alleged that he retired and was thereby deprived of such benefits.

affidavits do not impermissibly attempt to reduce plaintiffs' damages claim so as to compel remand, are appropriately considered by the court in evaluating the amount in controversy issue, and with a very few exceptions addressed *infra*, establish as a matter of law that affiant plaintiffs are certain not to be able to recover more than the damages for which they have prayed in their state court complaints. *See Arnold v. State Farm Fire and Cas. Co.*, 277 F.3d 772, 776 (5th Cir.2001).[10] And for those affiant plaintiffs for whom there exists no other basis for jurisdiction, remand is in order.

As indicated, there are a few plaintiffs about whom the court cannot conclude have, in fact, limited their damages demand to less than $75,000, and who have indicated that their damages are greater than this amount. That is, a review of deposition excerpts submitted by MLOA reveals that despite having executed affidavits claiming an amount in controversy of less than $75,000,

> Angela Harris, in response to questioning by MLOA's attorney, Angela Harris testified that she was claiming $74,999 for the worry she has had, and an additional $74,999 for punitive damages;
>
> Joe Willie Tate stated it was his understanding that he was suing for $175,000 "for all complaints;" and

Larry Tate testified that he was seeking "$79,000, you know, plus," in punitive damages.

In view of their testimony, the court concludes that these plaintiffs' affidavits should be disregarded, and based on their deposition testimony, the court further concludes that the amount in controversy on their claims exceeds $75,000; there being no other basis for jurisdiction over their claims, the court will deny these plaintiffs' motion to remand.

MLOA asks that the court strike the affidavits of seven other plaintiffs on the basis that they failed to sit for their depositions. The court is of the opinion that MLOA would be entitled to depose these defendants; however, as the court concludes that it has federal question jurisdiction over the claims of five of these plaintiffs, it appears that only two of these plaintiffs need be deposed respecting the amount in controversy issue, those being Brindle Ashford and Carolyn Jenkins. MLOA will have twenty days from the entry hereof within which to depose these plaintiffs,[11] and will have five days thereafter within which to supplement their response to these plaintiffs' remand motions.

As for the remaining plaintiffs other than those identified herein, the court concludes that defendant has failed to demonstrate that diversity jurisdiction exists.

---

**10.** Indeed, in *Arnold*, after noting that the district court had "fortified his ruling with reliance on post-removal affidavits by [two plaintiffs] that limit[ed] their joint claims to less than $75,000," 277 F.3d at 775 n. 3, the Fifth Circuit

agree[d] with the [district] judge's view that the affidavits preclude[d] [those plaintiffs] from seeking damages in excess of that amount in state courts either as a judicial admission, judicial estoppel or a matter of preclusion. *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 762 (5th Cir.1994). *Compare Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585–86, 119 S.Ct. 1563, 1570–71, 143

L.Ed.2d 760 (1999) (Supreme Court suggests in dictum that certain federal court jurisdiction decisions may be binding on parties on remand as a matter of issue preclusion).
*Id.*

**11.** For the five of these seven as to whom there remains the possibility that the court may have federal question jurisdiction so that it may ultimately prove unnecessary for MLOA to depose them, MLOA may choose to defer the depositions until such time as its assertion of ERISA jurisdiction is finally decided.

For those plaintiffs over whom defendants have not also asserted federal question jurisdiction as a basis for removal, remand will be ordered, and for those plaintiffs over whose claims defendant asserts federal question jurisdiction, the court turns to the question of whether there is ERISA-based federal question jurisdiction.

### Federal Question Jurisdiction: ERISA

MLOA contends that there is federal question jurisdiction over the claims of forty-two plaintiffs,[12] since the insurance policies that are the subject of these plaintiffs' complaints are covered by ERISA, which completely preempts their state law claims.[13]

■■■ Removal is generally available to the defendant in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" founded on the existence of a claim or right "arising under" federal law. 28 U.S.C. § 1441(a) and (b). Federal courts typically ascertain the existence of federal question jurisdiction by applying the "well-pleaded complaint" rule, by which jurisdiction under the general federal question jurisdiction statute is determined by reference to the plaintiff's complaint alone. The doctrine of complete preemption exists as a "corollary" to this rule, and is "used to define limited categories of state law claims that are 'completely preempted' such that 'any civil complaint raising this select group of claims is necessarily federal in character,' no matter how it is characterized by the complainant in the relevant pleading." *McClelland v. Gronwaldt*, 155 F.3d 507, 511–12 (5th Cir.1998) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). "In effect, the application of complete preemption 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 512 (citing *Taylor*, 107 S.Ct. at 1547). "Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to 'federal question' jurisdiction and thus may provide a basis for removal." *Id.* Thus, the court must make two separate determinations. First, the court must determine whether MLOA's insurance policy constitutes an ERISA plan; and second, if there is such a plan, the court must determine whether ERISA completely preempts the plaintiffs' state law claims. *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir.2000).

ERISA covers certain "employee benefit plans," which can include "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." An "employee welfare benefit plan" is defined as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). A pension benefit plan is a plan established to provide retire-

---

**12.** Those plaintiffs' cases are identified in Appendix B hereto.

**13.** Defendants state that for these 42 plaintiffs, there are ten employers with ERISA plans, namely, Prairie Opportunity, Inc. Head Start; National Picture Frame; Shuqualak Lumber Company; Isle of Capri–Casino–America–Natchez; Prince Lumber Company; Noxubee General Hospital and Nursing Home; Oak Tree Inn, Inc.; O.P.M., Inc.; Taylor Machine; and Lincoln Home.

ment income or to enable savings for retirement. 29 U.S.C. § 1002(2).[14]

█ The decision whether a particular plan or program qualifies as an "employee welfare benefit" plan under ERISA requires that the court determine whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"—established or maintained by an employer or employee organization intending to benefit employees or members. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir.1993).

█ Here, plaintiffs implicitly acknowledge that a plan exists, as indeed they should.[15] They maintain, however, that this plan falls under the safe harbor regulations promulgated by the Department of Labor which excludes certain insurance and other benefit plans from ERISA's coverage.

> If [a] ... plan meets the criteria set forth in the Department of Labor regulations, then ERISA does not cover that plan, and the inquiry is ended. If, however, the ... plan does not meet the criteria for exclusion from ERISA coverage in the Department of Labor regulations, then the court must go on to determine whether the plan meets the criteria adopted in this circuit which determine what plans are covered by ERISA.

*Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir.1991) (citations omitted).

The referenced Department of Labor "safe harbor" regulations provide that the term "employee welfare benefit plan":

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the

---

**14.** Section 1002(2) states:

[T]he terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

**15.** "At the outset, any court confronted with the question whether a particular arrangement constitutes an employee welfare benefit plan under ERISA 'must first satisfy itself that there is in fact a plan at all.' " *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). "A formal document designated as 'the Plan' is not required to establish that an ERISA plan exists." *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240–41 (5th Cir.1990). Informal arrangements will suffice, so long as "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 240 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3–1(j); *see also Hansen,* 940 F.2d at 976–77. The plan must meet all four criteria to be exempt. *Hansen,* 940 F.2d at 976; *see also McNeil v. Time Ins. Co.,* 205 F.3d at 190.

MLOA acknowledges that the plan at issue in this case meets criteria one, two and four of the safe harbor regulations, since the plaintiffs paid the entire premium for their coverage, their participation in the plan was voluntary, and their respective employers received no compensation in connection with the plan. It maintains, though, that the evidence shows that plaintiffs' employers' plans do not meet the third prong of the regulation, which requires that "the employer's functions with respect to the program be limited *solely* to permitting the insurer to publicize the program to its employees, collecting premiums and remitting them to the insurer." *Hansen,* 940 F.2d at 977 (emphasis in original). *See also Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1213 (11th Cir.1999) (stating that "[t]he regulation explicitly obliges the employer who seeks its safe harbor to refrain from any functions other than permitting the insurer to publicize the program and collecting premiums."); 40 Fed.Reg. 34,526 (Aug. 15, 1975) (explaining regulation in terms of "require-ment of employer neutrality..., namely the absence of employer involvement"). In the court's opinion, the evidence in the case at bar supports MLOA's contention that plaintiffs' employers did not so limit their involvement in the employees' plans.

On this subject, Katherine D'Arrigo, MLOA's director of policyholder services, testified by deposition that in relation to the subject plan, employers, in addition to their responsibility to make appropriate payroll deductions, are responsible to "help establish a product that's going to be available; [to] help establish the riders that will be available, the waiting period, the billing mode that would be chosen, those types of things." She elaborated on these matters briefly, explaining that MLOA offers certain riders and that employers work in conjunction with the insurer or insurance agent to make riders available to their employees, and she stated that the employers choose the waiting period, that being the time period an employee must be at work full time to be eligible to participate. This evidence alone is sufficient to place the plan beyond the safe harbor.[16] But there is, in addition to this evidence, undisputed proof that each employer expressly agreed to allow MLOA to announce the plan offering on employer stationery, to include informational inserts in the employee's pay envelopes; and to allow MLOA to use the employer's corporate symbols, slogans or name on solicitation/enrollment and promotional materials.

---

**16.** In their rebuttal brief, plaintiffs list and undertake to address seriatim each of the various actions claimed by defendant to have been taken by the employers relative to the plan. As to defendant's assertion that employers selected MLOA as the insurer, selected the type of insurance and selected the insurance riders to be made available, plaintiffs argue that "the record shows that MONY's agents solicited the employers and selected the types of insurance and riders;" yet they point to no "evidence" in support of this statement and instead simply refer the court to their complaint (stating "See Plaintiffs' Complaint"). To defendant's assertion that plaintiffs' employees selected the waiting period and kept up with which employees were eligible for coverage (i.e., were full-time employees working at least 32 hours a week), plaintiffs state simply, "Defendant MONY submitted no evidence that any employer did this." But the fact of the matter is, D'Arrigo stated in sworn testimony that these were the responsibilities of the employer.

The employers' agreement in this respect is set forth in a "MONY Benefit Plus Payroll Deduction" form executed by the employees, under the explicit terms of which each employer agreed,

1 . . . . to allow reasonable access to eligible employees, on Employer premises, during regular working hours for the purpose of explaining and enrolling them in the plan.

2 . . . . to honor and administer on a timely basis the written payroll deduction request made by each participant . . . . and to forward such deductions to MLOA on a monthly basis.

3 . . . . to allow MLOA representatives to commence a promotional process to include: (a) an Announcement Letter reproduced on Employer stationery and sent to all full-time employees; (b) Meetings held with management and/or supervisory personnel; (c) Payroll stuffers to be included in employees' pay envelopes; (d) Placement of posters on employee bulletin boards to announce employee group meetings; (e) Employee group meetings and distribution of Employee Brochures; (f) Individual meetings with MLOA representatives by employees to sign up voluntarily.

. . .

4 . . . . [either party] may terminate this program upon 90 days written notice . . . .

6 . . . . to allow MLOA to resolicit eligible employees not more than once each year for the purpose of promoting participation.

7 . . . . that MLOA may, at its cost and option, use the Employer's corporate symbols, slogans or name in solicitation/enrollment and promotional materials. Such usage does not constitute endorsement other than as agreed to herein or as stated in separate agreements.

This same form also included a "Trust Participation Agreement for MLOA Group Flexible Premium Adjustable Life to Age 95 Trust," executed by the respective employers, the stated purpose of which was "to afford employers who participate in the Trust ('Participants') certain group insurance benefits for their employees who qualify for the insurance." The agreement recited, *inter alia,* "For purposes of [ERISA], neither the Trustee nor MLOA is acting as the employer or plan sponsor, and the Participant shall be solely responsible for any compliance under this Act."

Although there is no evidence that MLOA ever, in fact, promoted the plan to employees using employers' logos or corporate symbols, in the court's opinion, the mere act of executing an agreement explicitly authorizing this to be done constitutes greater employer involvement than the safe harbor allows.[17] *Cf. Foxworth v. Durham Life Ins. Co.,* 745 F.Supp. 1227, 1231 (S.D.Miss.1990) (finding implicit employer endorsement where employer actively sought out a program and chose particular options to be offered his employees). Accordingly, the court concludes that the plan does not fall under the safe harbor.

The final step in the analysis of whether a plan falls within "the broad parameters of ERISA" requires the court to look to "the two 'primary elements of an

---

**17.** Plaintiffs have submitted evidence from three of the employers, Prince Lumber Company, UNEIK, Inc./National Picture Frame, and the Oak Tree Inn, which they contend shows that these employers did none of these things and thus did not endorse the MLOA plan. The affidavits from the Prince Lumber and UNEIK representatives, in which they deny having authorized MLOA to use the employers' corporate symbols, slogans and name in promotional materials, are flatly contradicted by the terms of the payroll deduction agreements, as is the letter from an Oak Tree Inn principal.

ERISA "employee welfare benefit plan" as defined by the statute: (1) whether an employer established or maintained the plan; and (2) whether the employer intended to provide benefits to its employees.'" *Meredith*, 980 F.2d at 355–56. That is to say, for an ERISA employee welfare benefit plan to exist, the employer must establish or maintain the plan. *See* 29 U.S.C. § 1001(2). This means, according to the Fifth Circuit, that there must be "some meaningful degree of participation by the employer in the creation or administration of the plan," and an "'intent to provide its employees with a welfare benefit program.'" *Hansen*, 940 F.2d at 978 (quoting *Memorial Hosp. Sys.*, 904 F.2d at 241); *see Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir.1991) (noting importance of focusing on the employer's intent and participation, rather than upon the plan's actions). Thus, to be considered an ERISA plan, defendant must show that the plan was intended to provide the employees with a welfare benefit program and that it participated in providing, i.e., creating or maintaining, the program.

Here, plaintiffs do not, nor could they reasonably contest their employers' intent to benefit them. But they argue that MLOA "ha[s] failed to set forth any evidence that the employers **maintained** the life insurance policies at issue." In fact, there appears to be no such evidence, or at least none that the court perceives as carrying much probative value. That is, the record contains no probative evidence that

the employers had any role in *administering* the plan.[18] However, the evidence referenced *supra*, and in particular D'Arrigo's testimony—which plaintiffs have not refuted—demonstrates that the employers did participate in the *creation* or *establishment* of the subject plan. The court thus concludes that defendant has sustained its burden to show that the subject plan is governed by ERISA.

▮▮▮▮ Having concluded that the policy sold by MLOA constitutes an ERISA plan, the question then becomes whether the plaintiffs' claims in this case are completely preempted by ERISA, for removal jurisdiction on the basis of ERISA exists only if that is the case. As the Fifth Circuit has explained,

There are two kinds of preemption under ERISA. There is complete preemption—where there is federal jurisdiction because ERISA contains specific enforcement provisions for the claim, *see* 29 U.S.C. § 1132, and thus occupies the entire field. Then there is conflict preemption—where the cause of action is preempted by 29 U.S.C. § 1144, but there is no federal jurisdiction because the cause of action is outside the scope of ERISA's civil enforcement provisions and is therefore governed by the well pleaded complaint rule. In that case, preemption is a defense to be raised in the state court, but is no basis for removal jurisdiction. *See Giles v. NYL-*

---

**18.** The record does contain evidence that in April 2001, MLOA sent to all the participating employers and all then-enrolled employees a summary plan description which, *inter alia*, names the plans as the plaintiffs' respective employer's "Life Insurance Plan," identifies the plan as an ERISA plan and lists plaintiffs' putative rights under ERISA, prominently identifies plaintiffs' employers on the front page and as the plan sponsor, and purports to reserve unto the respective employers the

right to amend, modify, suspend, discontinue or terminate the plan. The probative value of this document is negligible, though, as the document was sent *by MLOA*, not the employer, *after* this litigation was threatened and, in fact, during a tolling period to which the parties had agreed. The court thus has not considered the potential implications of this document in evaluating whether the plan is governed by ERISA.

*Care Health Plans, Inc.*, 172 F.3d 332, 336–37 (5th Cir.1999).

*Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 291 (5th Cir.1999); *Copling v. Container Store, Inc.*, 174 F.3d 590, 594 (5th Cir.1999) (stating that section 502 of ERISA, "by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pled as a state action"). Plaintiffs' claims do "relate to" the plan, and plaintiffs do not contend otherwise. Further, the claims they assert would appear to fall within the civil enforcement provisions of ERISA, namely, 29 U.S.C. § 1132(a). Therefore, the court concludes that it has federal question juris-diction over the claims of those forty-two plaintiffs identified in Appendix B hereto.

Based on the foregoing, it is ordered that the motions to remand filed by each of the forty-two plaintiffs identified in Appendix B are denied; it is further ordered that the motions of all those plaintiffs identified in Appendix A with an " * " are granted; it is ordered that the motions of plaintiffs Angela Tate, Joe Willie Tate and Larry Tate are denied; and it is ordered that MLOA shall have twenty days from the entry hereof to depose plaintiffs Brindle Ashford and Carolyn Jenkins, and will have five days thereafter within which to supplement their response to these two plaintiffs' remand motions.

## APPENDIX A

| Caption | Action Number |
| --- | --- |
| *Tammy Blaylock v. Mutual of New York Life Insurance Company* | 4:01CV174LN |
| * *Tonia Stewart v. Mutual of New York Life Insurance Company* | 4:01CV175LN |
| *Karl A. Wansley v. Mutual of New York Life Insurance Company* | 4:01CV176LN |
| * *Fred Sledge v. Mutual of New York Life Insurance Company* | 4:01CV178LN |
| * *Jimmie T. Green v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV179LN |
| *Mary Cheatham v. Mutual of New York Life Insurance Company* | 4:01CV180LN |
| *Howard Hill v. Mutual of New York Life Insurance Company* | 4:01CV181LN |
| *Willie Williams v. Mutual of New York Life Insurance Company* | 4:01CV182LN |
| *Angela Harris v. Mutual of New York Life Insurance Company* | 4:01CV183LN |
| *Demetrice Dunn v. Mutual of New York Life Insurance Company* | 4:01CV184LN |
| * *Martha Boykins v. Mutual of New York Life Insurance Company* | 4:01CV185LN |
| *Curtis Shamley v. Mutual of New York Life Insurance Company* | 4:01CV186LN |
| *Odessa Skinner v. Mutual of New York Life Insurance Company* | 4:01CV187LN |
| * *Alice Barber v. Mutual of New York Life Insurance Company* | 4:01CV188LN |
| * *Johnnie M. Griffin v. Mutual of New York Life Insurance Company* | 4:01CV189LN |
| * *Alonzo Smith v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV190LN |
| * *Virginia Austin v. Mutual of New York Life Insurance Company* | 4:01CV191LN |
| * *Kenneth Brown v. Mutual of New York Life Insurance Company* | 4:01CV192LN |
| * *Donald Chandler v. Mutual of New York Life Insurance Company* | 4:01CV193LN |
| * *Teresa Outlaw v. Mutual of New York Life Insurance Company* | 4:01CV194LN |
| * *Willie C. Brooks v. Mutual of New York Life Insurance Company* | 4:01CV195LN |
| *Terrance Williams v. Mutual of New York Life Insurance Company* | 4:01CV196LN |
| *Joe W. Tate v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV197LN |
| *Bennie Sanders v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV198LN |
| *Michael Brandon v. Mutual of New York Life Insurance Company* | 4:01CV199LN |
| * *Jimmy King v. Mutual of New York Life Insurance Company* | 4:01CV200LN |

| Caption | Action Number |
| --- | --- |
| *Rozina P. Brown v. Mutual of New York Life Insurance Company* | 4:01CV201LN |
| *Willie B. Cunningham v. Mutual of New York Life Insurance Company* | 4:01CV202LN |
| *Johnny Sanders v. Mutual of New York Life Insurance Company* | 4:01CV203LN |
| *Charlie Smoot v. Mutual of New York Life Insurance Company* | 4:01CV204LN |
| *Joe Davis v. Mutual of New York Life Insurance Company* | 4:01CV205LN |
| *John Granger v. Mutual of New York Life Insurance Company* | 4:01CV206LN |
| *Kathy Granger v. Mutual of New York Life Insurance Company* | 4:01CV207LN |
| *Willie Bullins v. Mutual of New York Life Insurance Company* | 4:01CV208LN |
| *Johnny Medcalf v. Mutual of New York Life Insurance Company* | 4:01CV209LN |
| *Robert Johnson v. Mutual of New York Life Insurance Company* | 4:01CV210LN |
| *Edward Mosley v. Mutual of New York Life Insurance Company* | 4:01CV211LN |
| *Frederick Bryant v. Mutual of New York Life Insurance Company* | 4:01CV212LN |
| *Larry Tate v. Mutual of New York Life Insurance Company* | 4:01CV213LN |
| *Kennedy Miller v. Mutual of New York Life Insurance Company* | 4:01CV214LN |
| * *Alfred Brooks v. Mutual of New York Life Insurance Company* | 4:01CV215LN |
| *Ernie Simpson v. Mutual of New York Life Insurance Company* | 4:01CV216LN |
| *Robin Harris v. Mutual of New York Life Insurance Company* | 4:01CV217LN |
| * *Joe Hopkins v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV218LN |
| *Sylvester Tate v. Mutual of New York Life Insurance Company* | 4:01CV219LN |
| *Climmie E. Jones v. Mutual of New York Life Insurance Company* | 4:01CV220LN |
| * *Willie B. Ramsey v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV221LN |
| * *Annie Brown v. Mutual of New York Life Insurance Company* | 4:01CV222LN |
| * *Jerry Harris v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV223LN |
| * *Betty Chandler v. Mutual of New York Life Insurance Company* | 4:01CV224LN |
| *Lucille Silvers v. Mutual of New York Life Insurance Company* | 4:01CV225LN |
| *Carolyn Jenkins v. Mutual of New York Life Insurance Company* | 4:01CV226LN |
| * *David Brandon v. Mutual of New York Life Insurance Company* | 4:01CV227LN |
| * *Vastie Williams v. Mutual of New York Life Insurance Company* | 4:01CV228LN |
| * *Henry Lockett, Jr. v. Mutual of New York Life Insurance Company* | 4:01CV229LN |
| * *Roosevelt Smith v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV230LN |
| * *William Nave v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV231LN |
| *Ora Bush v. Mutual of New York Life Insurance Company* | 4:01CV232LN |
| * *Annie M. Bryant v. Mutual of New York Life Insurance Company* | 4:01CV233LN |
| *Brindle T. Ashford v. Mutual of New York Life Insurance Company* | 4:01CV234LN |
| *Loretta Williams v. Mutual of New York Life Insurance Company* | 4:01CV235LN |
| * *Robert Beasley v. Mutual of New York Life Insurance Company* | 4:01CV236LN |
| * *Jimmie L. Chandler v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV237LN |
| * *Catina Stewart v. Mutual of New York Life Insurance Company* | 4:01CV238LN |
| *Susie Bush v. Mutual of New York Life Insurance Company* | 4:01CV239LN |
| * *Ralph Henley v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV240LN |
| * *Renzie Robinson v. Mutual of New York Life Insurance Company* | 4:01CV241LN |
| * *Edwina Conner v. Mutual of New York Life Insurance Company* | 4:01CV242LN |

| Caption | Action Number |
| --- | --- |
| *Carrie Horne v. Mutual of New York Life Insurance Company* | 4:01CV243LN |
| * *John Brown v. Mutual of New York Life Insurance Company* | 4:01CV244LN |
| *Ricky J. Hyde v. Mutual of New York Life Insurance Company* | 4:01CV245LN |
| * *Bertha Beasley v. Mutual of New York Life Insurance Company* | 4:01CV246LN |
| *Mercel Horn v. Mutual of New York Life Insurance Company* | 4:01CV247LN |
| *Mabel J. Sander v. Mutual of New York Life Insurance Company* | 4:01CV248LN |
| *William Merriweather v. Mutual of New York Life Insurance Company* | 4:01CV249LN |
| *Jerry Hyde v. Mutual of New York Life Insurance Company* | 4:01CV250LN |
| * *Burt B. Bonner v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV251LN |
| * *Albert Stewart v. Mutual of New York Life Insurance Company, Jana Thornton* | 4:01CV252LN |
| * *Thelma Brooks–Geeter v. Mutual of New York Life Insurance Company* | 4:01CV253LN |
| * *Maxie Chandler v. Mutual of New York Life Insurance Company* | 4:01CV254LN |
| *Joseph Beckwith v. Mutual of New York Life Insurance Company* | 4:01CV255LN |
| *James E. Jones v. Mutual of New York Life Insurance Company* | 4:01CV256LN |
| *Cliff Webb v. Mutual of New York Life Insurance Company* | 4:01CV257LN |
| *Joanne Ruffin v. Mutual of New York Life Insurance Company* | 4:01CV261LN |
| * *Bettie McNeese v. Mutual of New York Life Insurance Company* | 4:01CV262LN |
| *Morris Dale v. Mutual of New York Life Insurance Company* | 4:01CV263LN |

## APPENDIX B

| Caption | Action Number |
| --- | --- |
| *Tammy Blaylock v. Mutual of New York Life Insurance Company* | 4:01CV174LN |
| *Karl A. Wansley v. Mutual of New York Life Insurance Company* | 4:01CV176LN |
| *Mary Cheatham v. Mutual of New York Life Insurance Company* | 4:01CV180LN |
| *Howard Hill v. Mutual of New York Life Insurance Company* | 4:01CV181LN |
| *Willie Williams v. Mutual of New York Life Insurance Company* | 4:01CV182LN |
| *Demetrice Dunn v. Mutual of New York Life Insurance Company* | 4:01CV184LN |
| *Curtis Shamely v. Mutual of New York Life Insurance Company* | 4:01CV186LN |
| *Odessa Skinner v. Mutual of New York Life Insurance Company* | 4:01CV187LN |
| *Terrance Williams v. Mutual of New York Life Insurance Company* | 4:01CV196LN |
| *Bennie Sanders v. Mutual of New York Life Insurance Company* | 4:01CV198LN |
| *Michael Brandon v. Mutual of New York Life Insurance Company* | 4:01CV199LN |
| *Rozina P. Brown v. Mutual of New York Life Insurance Company* | 4:01CV201LN |
| *Willie B. Cunningham v. Mutual of New York Life Insurance Company* | 4:01CV202LN |
| *Johnny Sanders v. Mutual of New York Life Insurance Company* | 4:01CV203LN |
| *Charlie Smoot v. Mutual of New York Life Insurance Company* | 4:01CV204LN |
| *Joe Davis v. Mutual of New York Life Insurance Company* | 4:01CV205LN |
| *John Granger v. Mutual of New York Life Insurance Company* | 4:01CV206LN |
| *Kathy Granger v. Mutual of New York Life Insurance Company* | 4:01CV207LN |
| *Willie Bullins v. Mutual of New York Life Insurance Company* | 4:01CV208LN |
| *Johnny Medcalf v. Mutual of New York Life Insurance Company* | 4:01CV209LN |
| *Robert Johnson v. Mutual of New York Life Insurance Company* | 4:01CV210LN |
| *Edward Mosley v. Mutual of New York Life Insurance Company* | 4:01CV211LN |

| Caption | Action Number |
|---|---|
| *Frederick Bryant v. Mutual of New York Life Insurance Company* | 4:01CV212LN |
| *Kennedy Miller v. Mutual of New York Life Insurance Company* | 4:01CV214LN |
| *Ernie Simpson v. Mutual of New York Life Insurance Company* | 4:01CV216LN |
| *Robin Harris v. Mutual of New York Life Insurance Company* | 4:01CV217LN |
| *Climmie E. Jones v. Mutual of New York Life Insurance Company* | 4:01CV220LN |
| *Lucille Silvers v. Mutual of New York Life Insurance Company* | 4:01CV225LN |
| *Ora Bush v. Mutual of New York Life Insurance Company* | 4:01CV232LN |
| *Loretta Williams v. Mutual of New York Life Insurance Company* | 4:01CV235LN |
| *Susie Bush v. Mutual of New York Life Insurance Company* | 4:01CV239LN |
| *Carrie Horne v. Mutual of New York Life Insurance Company* | 4:01CV243LN |
| *Ricky J. Hyde v. Mutual of New York Life Insurance Company* | 4:01CV245LN |
| *Mercel Horn v. Mutual of New York Life Insurance Company* | 4:01CV247LN |
| *Mabel J. Sander v. Mutual of New York Life Insurance Company* | 4:01CV248LN |
| *William Merriweather v. Mutual of New York Life Insurance Company* | 4:01CV249LN |
| *Jerry Hyde v. Mutual of New York Life Insurance Company* | 4:01CV250LN |
| *Joseph Beckwith v. Mutual of New York Life Insurance Company* | 4:01CV255LN |
| *James E. Jones v. Mutual of New York Life Insurance Company* | 4:01CV256LN |
| *Cliff Webb v. Mutual of New York Life Insurance Company* | 4:01CV257LN |
| *Joanne Ruffin v. Mutual of New York Life Insurance Company* | 4:01CV261LN |
| *Morris Dale v. Mutual of New York Life Insurance Company* | 4:01CV263LN |

## ORDER CORRECTING AND AMENDING MEMORANDUM OPINION AND ORDER

By memorandum opinion and order dated June 14, 2002, this court ordered that the motions of certain of the plaintiffs in these consolidated cases be granted and those of other plaintiffs be denied, and stayed ruling on the motions to remand filed by two plaintiffs pending further discovery by defendant. In that opinion dated June 14, this court undertook to deny the motion to remand of Angela Harris, but erroneously referred to her as Angela Tate. The court further intended that plaintiff Sylvester Tate's motion to remand be granted, but neglected to so indicate with an " * " by his name in Appendix A to the court's opinion. This order is intended to correct those errors and omissions, and it is therefore ordered that the motion to remand of Angela Harris, in Civil Action No. 4:01CV183LN is denied, and the motion to remand filed by Sylvester Tate in Civil Action No. 4:01CV219 is granted.